## THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

MARCO Z., individually,

       *Plaintiff*,

    vs.

UNITEDHEALTHCARE INSURANCE
COMPANY, and FORMA AUTOMOTIVE, LLC,

      *Defendant*.

CIVIL ACTION NO: 20-cv-00351

**COMPLAINT and JURY DEMAND**

Plaintiff, MARCO Z. ("M.Z." or "Plaintiff"), individually and by and through undersigned counsel, sues Defendants, UNITEDHEALTHCARE INSURANCE COMPANY ("UHC") and FORMA AUTOMOTIVE, LLC ("Forma") (collectively, "Defendants"), as follows:

### NATURE OF THE ACTION, PARTIES, JURISDICTION, AND VENUE

1.    This action arises out of Defendants' breach of health insurance contract (and violation of Texas laws), namely Defendants' wrongful decision to deny covered claims relating to an emergency hospitalization that the subject insured (M.Z.) underwent in the Summer of 2017 at the Hospital Regional Del Rio in Mexico. *See* Counts II-VII, *infra*. This action also arises out of Defendants' administrative record / claim file production failures. *See* Count I, *infra*.

2.    At all material times, M.Z. was insured under the health insurance plan for Forma, which such plan had an effective date of March 1, 2017. At all material times, M.Z. was a resident of Bexar County, Texas. M.Z. is of adult age.

3.      At all material times, UHC was an insurance company engaged in the business of selling and / or administering health insurance and / or deciding and / or paying health insurance claims throughout the country, including in the State of Texas. At all material times, UHC's principal place of business / headquarters (nerve center) was in the State of Connecticut and UHC is also incorporated in the State of Connecticut.

4.      At all material times, Forma was a manufacturing company engaged in the business of supplying and assembling car parts. At all material times, and in pertinent part here, Forma was engaged in the administration and / or sponsorship of the subject health insurance plan.[1] Forma was formed in the State of Texas and, at all material times, Forma's principal place of business / headquarters (nerve center) was in the State of Texas. Forma's members are as follows: (a) Rosa Santana (Founder and CEO), domiciled in Texas, (b) Lisa Navarro-Gonzalez (Vice President), domiciled in Texas, (c) Fernando Peralta (CFO), domiciled in Texas, (d) Pat Franco (Manager), domiciled in Texas, and (e) Jose Peralta (General Manager), domiciled in Texas.

5.      This Court has original jurisdiction over this matter pursuant to Title 28, United States Code, Section 1331 and Title 29, United States Code, Section 1332(e) as to Count I sounding in federal Codes.[2] This Court has, at minimum, supplemental jurisdiction over the remaining counts pursuant to Title 28, United States Code, Section 1367. If Forma does not belong in this action (*see* footnote 1, *supra*), it is important to note that this Court

---

[1] Upon information and belief, the subject health insurance plan is self-funded, at least in part. If, however, the subject health insurance plan was / is fully-insured (as opposed to partially or wholly self-funded) and Forma had nothing to do with pre-suit claim and appeal decision-making and / or the pre-suit records production failure, Forma could be dismissed out of this action.

[2] As noted below, Count I is also pleaded in the alternative as a breach of contract action.

would also have diversity jurisdiction over all counts pursuant to Title 28, United States Code, Section 1332, as the remaining parties would then be completely diverse, and the amount in controversy exceeds $75,000.00, exclusive of fees, costs, interest, or the like.

6.      Venue is proper in the Western District Court of Texas pursuant to Title 28, United States Code, Section 1391(b), since, for examples, (a) UHC carries out its business in the State of Texas, including within this District, (b) Forma and its members are Texans, (c) facts and circumstances (*e.g.*, claim denial correspondence) giving rise to the causes of action set forth herein transpired (at least in part) in this District, and, (d) upon information and belief, the subject insurance policy was delivered in this District.

7.      All conditions precedent to the institution of this action have occurred, been performed, been waived, were not mandatory, and / or were futile. Futility is especially at play here, given UHC's apathetic and delayed communications in late-2019 involving Med-X Global, LLC's ("Med-X") in-house counsel, with Med-X being a domestic billing agency whose mission is to assist people or companies (like M.Z. here) procure owed insurance benefits to satisfy medical bills (here, the Hospital Regional Del Rio bills) and with Med-X being an authorized representative (along with Hospital Regional Del Rio, for that matter) in this regard at all material times.[3]

---

[3] The insurance policy / Plan document (**Exhibit A**, attached hereto and incorporated fully herein by reference) permits an authorized representative (here, Hospital Regional Del Rio and / or Med-X) to pursue proper indemnification. *See, e.g.,* Ex. A at VII ("Any member [M.Z.] or someone that member names to act as an authorized representative [Hospital Regional Del Rio and / or Med-X] may file an appeal" following an adverse benefits determination).

## COMMON ALLEGATIONS

8.      At all material times, M.Z. was covered under a Forma health insurance policy / plan issued, underwritten, and serviced by UHC, bearing Group No. G/GA2X7712NM (the "Policy" or "Plan document"). Again, a copy of the Policy / Plan document in effect at all material times is attached as Exhibit A.

9.      Upon information and belief, the Policy is a self-funded health insurance program offered by Forma to its employees.[4]   At all material times, premium payments for the Policy were current.

10.      The Policy is a contract whereby Defendants, in exchange for premium payments, agreed to provide coverage for medical services, including medical services such as those provided by Hospital Regional Del Rio to M.Z. and adjusted by Med-X.

11.      In the Summer of 2017, M.Z. sustained serious medical problems, primarily (but not necessarily entirely, given side-conditions / side-effects) of a gastrointestinal nature while in Mexico.

12.      M.Z. treated (including surgically) at Hospital Regional Del Rio, and M.Z.'s admission lasted for over a month; to be precise, from May 12, 2017, through June 24, 2017.

13.      Hospital Regional Del Rio's billed charges for the aforementioned medical services totaled $557,974.35.

14.      M.Z. assigned and / or authorized his benefits to Hospital Regional Del Rio in Mexico as compensation for the aforementioned medical bill. The Policy permits such assignment and / or authorization. *See, e.g.*, Ex. A at 4 and 42; Ex. A at VII, *supra* at footnote 3; Texas Ins. Code § 1204.053 (permitting assignment). To be clear, the insurance benefits

---

[4] But, again, *see* footnote 1, *supra*.

owed to M.Z. by Defendants (and that are to be recovered in this action) will be routed to Hospital Regional Del Rio to satisfy M.Z.'s outstanding bill (which is precisely what Med-X tried to do for everybody pre-suit, but Defendants would not give Med-X the time of day, and when they did, the basis for claim denial was ridiculous).

15.     Given Hospital Regional Del Rio in Mexico was / is abroad (with various complications / hardships associated with that, such as travel and overall nearness) and / or not savvy in relation to working with domestic insurance companies for proper indemnification, the hospital retained the services of a domestic claim adjusting / billing company (Med-X) to obtain the insurance benefits for M.Z. to pay M.Z's hospital bill under the assignment he had already made to Hospital Regional Del Rio or just in general regardless of assignment; *i.e.*, to obtain the proper payment from Defendants for Hospital Regional Del Rio in Mexico for the valuable (life-saving) medical services provided to the patient / insured, M.Z.

16.     Hospital Regional Del Rio's claim submission package was timely submitted to UHC by Med-X on M.Z.'s behalf as Policy permitted authorized representatives.

17.     Thereafter, UHC's claim decision-making waffled significantly and incoherently. At one point (specifically, in December 2018), UHC offered Med-X the lowball amount of $223,489.80 (approximately 40% of the subject medical bill) to resolve the subject claim – this offer was communicated to Med-X by MultiPlan (a UHC re-pricing vendor, upon information and belief) on UHC's behalf on essentially a take it or leave it basis. At other points, UHC offered indemnification amounts for pennies on the billed dollars; *e.g.*, in October 2019, after approximately ten months of radio silence from UHC, UHC extended an uber lowball amount of $63,000.00 (approximately 11% of the subject

medical bill and approximately 29% less than what UHC, *via* MultiPlan, had offered previously as discussed above). At other times, UHC floated inaccurate concepts aimed at claim denial. Most (if not all) of which such carrier waffling is outlined in **Exhibit B** (correspondence between Med-X's in-house counsel and UHC, incorporated fully herein by reference and discussed below). But such waffling can be best classified as UHC not knowing a left hand from a right hand or an apple from an orange, which such (feigned) ignorance, we submit, was / is quite intentional conduct aimed at pure delay and / or war of attrition (by definition, an unfair trade practice; *i.e.*, bad faith).

18.     Thereafter, several weeks of communications concerning the wayward Defendants' decision-making unfolded between Med-X and UHC, culminating with more direct communications late last year between Med-X's in-house counsel (Robert Trautmann, Esq., "Trautmann") and UHC's in-house counsel (Christopher Coxon, Esq., "Coxon").

19.     During the Trautmann and Coxon conversations, Coxon (on UHC's behalf, and really Defendants' behalf, for that matter) significantly delayed in rendering a claim decision and hinted at grounds for denial; *e.g.*, hinting that M.Z.'s subject services were not covered because of a supposed elective bariatric procedure he supposedly received sometime prior to the subject services at a who-knows-where medical facility. *See* Ex. B.

20.     In response to the exclusion Coxon / UHC was angling at, Trautmann properly pointed out Policy language showing that complications from an elective procedure (assuming *arguendo* the veracity of the bariatric-related procedure) would find coverage. *See* Trautmann / Coxon email trains attached hereto as Ex. B, which such exhibit, again, is incorporated fully herein by reference (including the accurate Policy language quoted in Trautmann's emails to Coxon). But the coverage conversation can be paraphrased as

follows: M.Z.'s lengthy hospital admission and extensive medical services were the definition of "emergency" and, assuming *arguendo* M.Z.'s need for medical services arose from a complication from a prior supposed elective procedure, the subject Hospital Regional Del Rio services explicitly find coverage under the Policy in that vein as well. Again, this is outlined in Exhibit B.

21.     Ultimately, by Provider Remittance Advice (more commonly called an Explanation of Benefits, "EOB") dated November 20, 2019, UHC finally put its claim decision to writing – $0.00. The reason for denial?  Per the EOB, in pertinent part: "We have not received all the requested information needed to process your claim."  Given the EOB listed no coverage-based reasons for denial (*e.g.*, medical necessity or experimental / investigational), this is a pure "rate of payment" dispute (not subject to ERISA as it concerns Counts II-VII, or even Count I in the breach of contract alternative).[5, 6]  The carrier's basis for claim denial (the purported failure to provide documentation) is belied by many things, chief among which is the Texas law articulated in Med-X's October 28, 2019, letter (part of Exhibit B, which such exhibit, again, is incorporated fully herein by reference) pertaining to the deadlines by which a carrier must request additional documentation from a claimant.

---

[5] Again, it would appear that the Plan is structured under ERISA, generally; hence, Count I sounding in United States Code / Code of Federal Regulations and penalties in the primary. Although Defendants' records production failures also constitute breach of contract, at minimum, in the alternative.

[6] Historically, "right of payment" disputes (*i.e.*, coverage disputes) are subject to ERISA. And, historically, such disputes concern claim denials of a medical judgment nature; *e.g.*, medically unnecessary or experimental / investigational. Again, Defendants' bogus / untrue "we did not get enough information to make a decision" claim denial (after they tried various other kinds of claim denials on for size to no avail) has nothing to do with medical judgment; rather, such has everything to do with just $0.00 lowballing; *i.e.*, a pure "rate of payment" dispute not subject to ERISA as it concerns all counts other than Count I. Although, again, Count I is also viable in the alternative under a breach of contract context. To be clear, the thrust of this action is M.Z.'s contesting a $0.00 rate of payment.

22.     UHC's (and Forma's by extension and ratification as presumed Plan sponsor and / or administrator, *see* footnote 1, *supra*) basis for claim denial was / is absurd. Hospital Regional Del Rio and / or Med-X (as Policy permitted authorized representatives of M.Z.) provided UHC with a wealth of information showing M.Z.'s conditions, procedures, the hospital's billed charges (line-itemed), and *et cetera*. Ultimately, UHC's claim decision was the proverbial "punt," completely disingenuous, a huge waste of time (after a significant passage of time), another ploy at delaying claim payment (while Defendants have earned interest, investment profits, and perhaps level-funded plan profits on the owed monies that have been wrongly withheld), and, most important of course, factually and legally amiss.

23.     Pre-suit resolution efforts were more than exhausted with UHC. And, at the very least, given the worthless EOB explanation for claim denial (noted above) after a plethora of information / documentation had been exchanged and quite a bit of time had passed, it was the epitome of futility to try to work with Defendants any further pre-suit. Med-X (and, for that matter, Hospital Regional Del Rio and M.Z.) were more than patient with UHC before regrettably having to head to the courtroom as the regrettable last resort.

24.     Part and parcel with Med-X's pre-suit efforts with Defendants, Med-X put forth a legally prescribed request for the administrative record / claim file; *i.e.*, information / documentation germane to the claim decision-making. Again, as noted above, Med-X was authorized to do so, and did so by letter dated April 10, 2018. On April 17, 2018, UHC responded to that letter requesting a signed authorization from M.Z. On April 25, 2018, Med-X provided the requested authorization to UHC. Having not received the requested documentation, Med-X through counsel, emailed general counsel for UHC (Marianne Short) and forwarded the previous administrative record / germane materials request on May 10,

2018. On May 14, 2018, counsel for Med-X (Trautmann) received a telephone call from a UHC representative named "Tish" who advised that the administrative record / germane materials were being provided. When the documents promised by "Tish" did not arrive, counsel for Med-X (Trautmann) once again emailed UHC general counsel (Marianne Short) on July 9, 2019, demanding action on the file. Then Defendants finally relented (as they had to under federal Codes and / or under the Policy) by providing Med-X with a compact disc supposedly containing the germane materials. Not-so-surprisingly, however, the CD was blank. So, then Med-X asked Defendants for a CD with materials actually on it. Thereafter, Defendants refused the request – still to this date, the administrative record / claim file has not been received by M.Z. and / or M.Z.'s authorized representative (Med-X).

25.    Ultimately, on the administrative record / claim file front or insurance benefits front, M.Z. was regrettably left with no recourse other than this lawsuit; Defendants' records production failures have compromised M.Z. evidentiarily and Defendants' payment failures have significantly exposed M.Z. financially.

### COUNT I – PETITION TO COMPEL PRODUCTION OF THE "ADMINISTRATIVE RECORD" AND FOR RECOVERY OF ADMINISTRATIVE RECORD PRODUCTION FAILURE PENALTY PURSUANT TO ERISA, 29 U.S.C. § 1024(B), 29 U.S.C. § 1132(c)(1) AND 29 C.F.R. § 2575.502c-1 / BREACH OF CONTRACT (AS TO OWED RECORDS), IN THE ALTERNATIVE

Plaintiff re-alleges Paragraphs 1 through 25 as if fully set forth herein, and further alleges as follows.

26.    This is a claim for production of the administrative record and for award of administrative record production failure penalty pursuant to Title 29, United States Code, Section 1132(c)(1), Title 29, United States Code, Section 1024(b), and Title 29, Code of

Federal Regulations, Section 2575.502c-1.[7]  In the alternative, this is a breach of contract claim for germane records promised by the insurance contract.[8]

27.     By various communications (referenced in the above common allegations), Med-X (again, M.Z.'s Policy-permitted authorized representative) asked Defendants to provide the administrative record / germane documentation in relation to the M.Z. claim, mainly (but not entirely) to learn Defendants' reasons for claim delay and to foster the appropriate result – full claim payment.

28.     Defendants shirked their legally (whether that be United States Code or Texas law) and also contractually prescribed (*see* n. 8, *supra*) administrative / germane record production responsibilities.

29.     Per the United States Code and Code of Federal Regulations captioned in the above Count I title, the $110.00 / day administrative penalty started accruing May 11, 2018.[9]  From May 11, 2018, through the date of this complaint (March 20, 2020), 680 days have passed without Defendants' satisfaction of the administrative record / germane record requests made in the aforementioned communications regarding the M.Z. claim. So, as of the filing date of this complaint, the $110.00 / day administrative penalty totals $74,800.00.

---

[7] The insurance policy (Ex. A) provides, in pertinent part, as follows: "Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents … and do not receive them within 30 days, you may file suit in federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110.00 a day until you receive the materials … ." Ex. A at 94.

[8] The insurance policy (Ex. A) provides, in pertinent part, as follows: "Upon request and free of charge, you have the right to reasonable access to and copies of all documents, records and other information relevant to your claim for Benefits." *See, e.g.,* Ex. A, APPEALSAMD.I.TXR2 at 2; *id.* at 3 (same); *et cetera*.

[9] This represents the date that falls 31 days after the April 10, 2018, request for the administrative record / germane records promised by federal codes and / or the insurance contract.

Of course, the $110.00 / day penalty will continue to accrue until such time that Defendants oblige the germane documentation / information requests (*e.g.,* a certified copy of the policy / plan document, payment rate schedules / formulas, *et cetera*).[10]

30.    M.Z. has no other adequate remedy other than this lawsuit to address the injuries M.Z. has suffered as a result of Defendants' wrongful withholding of the administrative record / germane documentation.

31.    As a further result of Defendants' refusal to produce the administrative record / germane documentation, M.Z. has been forced to retain legal counsel for representation in this matter and is accordingly entitled to recover reasonable attorneys' fees and costs pursuant to Title 29, United States Code, Section 1132(g)(1), or Texas Ins. Code § 541.152, or as otherwise awardable.

32.    As stated in the caption of this Count, if the Court somehow does not consider this Count sounding under ERISA at least in part (and being subject to the Codes' $110.00 / day production failure penalty and immediate production), then this Count is pleaded as a breach of contract action in the alternative given the Policy entitles the insured / claimant (M.Z.) or the insured's authorized representative (Med-X, or Hospital Regional Del Rio for that matter) to copies of all materials that influenced, in whole or in part, pre-suit claim and appeal decision-making.[11]

WHEREFORE, Plaintiff respectfully requests (a) Court order compelling Defendants to produce the outstanding administrative record / claim file posthaste and allowing Plaintiff thirty days following production of the administrative record to amend

---

[10] *See* footnote 7, *supra*.

[11] *See* footnote 8, *supra*.

this complaint if need be, (b) an award to Plaintiff of the administrative record production failure penalty incurred by Defendants pursuant to Title 29, United States Code, Section 1132(c)(1), Title 29, United States Code, Section 1024(b), and Title 29, Code of Federal Regulations, Section 2575.502c-1, (c) an award to Plaintiff of attorneys' fees (pursuant to Title 29, United States Code, Section 1132(g)(1), at the very least) and costs incurred bringing this action, and (d) the Court's affording of any other relief the Court deems equitable, just, and / or proper.

## COUNT II – BREACH OF CONTRACT (AS TO INSURANCE BENEFITS)

Plaintiff re-alleges Paragraphs 1 through 25 as if fully set forth herein, and further alleges as follows.

33.     At all material times to this action and in exchange for a valuable premium, Defendants provided health insurance to M.Z. under the Policy, which is a binding and enforceable insurance contract under the laws of the State of Texas.

34.     The subject medical services were covered under the Policy, as evidenced by Defendants' EOB saying nothing to the contrary and express Policy language affording coverage for M.Z.'s precise (emergency and / or complications) situation. *See, e.g.,* Ex. B, incorporated fully herein by reference. As for the Policy's direct support for coverage, there is no need to reinvent the wheel. *See, e.g.,* Ex. B, incorporated fully herein by reference. The subject Hospital Regional Del Rio bill should have been paid out rather than woefully delayed and then frivolously denied.

35.     By the terms of the Policy and pursuant to Texas law regardless, Defendants had a duty to, among other things, properly investigate the subject medical services, adjust / investigate the subject claim relating to such services, and properly compensate M.Z. so that

M.Z. could satisfy Hospital Regional Del Rio's bill for the valuable medical services rendered to M.Z. for approximately a month and a half. Proper compensation of Hospital Regional Del Rio is now on M.Z. (a lay insured) because of UHC's nefarious claim handling and decision-making.

36.     Defendants failed Plaintiff in these regards (most notably with respect to their failure to properly compensate M.Z. to in turn properly compensate the medical provider for the valuable medical services rendered to M.Z.), which breached the Policy and / or violated Texas law (including Texas' prompt payment laws, *see, e.g.,* Texas Ins. Code § 542.060).

37.     As a direct, foreseeable, and proximate result of Defendants' breach of their obligations under the Policy and / or obligations under Texas law, Plaintiff has suffered and continues to suffer damages (in the form of significant monetary exposure created by Defendants' nonsensical and truly unsubstantiated $0.00 payment).

38.     Plaintiff has no other adequate remedy other than this lawsuit to address the injuries suffered as a result of Defendants' improper compensation rate ($0.00) to Plaintiff related to the plainly covered subject medical procedure(s).

39.     As a further result of Defendants' refusal to properly cover Plaintiff (*via* full payment to M.Z. to then satisfy the medical provider's bill), Plaintiff has been forced to retain legal counsel for representation in this matter and is accordingly entitled to recover reasonable attorneys' fees and costs pursuant to Texas Civil Practice & Remedies Code § 38.001(8) or as otherwise awardable.

WHEREFORE, Plaintiff respectfully requests the entry of judgment against Defendants for liability and for damages including, but not limited to, past-due contractual

benefits, attorneys' fees pursuant to Texas Civil Practice & Remedies Code § 38.001(8), Texas Ins. Code § 541.152, or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## COUNT III – UNJUST ENRICHMENT [12]

Plaintiff re-alleges Paragraphs 1 through 25 as if fully set forth herein, and further alleges as follows.

40.     Hospital Regional Del Rio conferred a direct benefit on Defendants by providing the insured / member (M.Z.) with medical services to which the insured was entitled under the Policy as evidenced by Defendants' non-coverage based EOB explanation for $0.00 payment and the glaringly express Policy language (*see, e.g.,* Ex. B) affording coverage for M.Z.'s precise situation. Examples of "conferral of benefit" would include the following, for examples, which are posed as questions: (a) What about UHC receiving the benefit when its insured received care and treatment offering Defendants' Policy as the method of payment? (b) What about the good health of M.Z. conferred on UHC and / or Forma?  Was it not of benefit to UHC and Forma that Hospital Regional Del Rio minimized (if not entirely eliminated) M.Z.'s future medical expense (and insurance claims to Defendants) relating to the subject conditions such as prolonged alternative treatments or a return for more (and perhaps more complex) surgery due to complications arising out of some other inferior treatment regimen?

41.     Defendants voluntarily accepted and received the benefit conferred by Hospital Regional Del Rio, with the knowledge (through course of past dealings with

---

[12] Plaintiff concedes that some sort of double or triple recovery cannot be enjoyed across Counts II-V, but the law certainly permits Plaintiff to plead in the alternative and not yet have to prematurely elect remedies.

Hospital Regional Del Rio or Med-X or M.Z. or otherwise, at least as it concerns UHC) that Hospital Regional Del Rio expected to be paid the reasonable value of its services; *i.e.*, usual, customary, and reasonable charges as determined, for example, by comparing rates of medical providers of like kind within like geography.

42.      Defendants have not paid the value of the benefit conferred by Hospital Regional Del Rio in that Defendants have significantly underpaid ($0.00) the claim for the medical services provided to M.Z. M.Z. deserves full indemnification so that the subject medical bill(s) can be satisfied and M.Z.'s financial exposure extinguished.

43.      Defendants' underpayment ($0.00) results in a windfall for Defendants in that, for examples, (a) Defendants collect premiums in return for agreeing to properly compensate providers, like Hospital Regional Del Rio, who render covered medical services, and / or (b) Defendants enjoy an unearned profit in relation to the insurance benefits themselves, in relation to interest that has accrued on the wrongly withheld benefits, in relation to investment returns enjoyed through the monies wrongly withheld from Hospital Regional Del Rio, in relation to level-funded plan profits enjoyed through the wrongly withheld monies, and / or *et cetera*.

44.      It is unjust under the circumstances for Defendants to not pay the subject claim; *i.e.*, provide M.Z. with deserved monies needed to satisfy the medical provider's bill.

45.      Plaintiff has no other adequate remedy other than this lawsuit to address the injuries suffered as a result of Defendants' underpayment ($0.00) of the subject health insurance benefits.

46.      As a further result of Defendants' refusal to properly compensate Hospital Regional Del Rio (*via* a proper rate of payment to the insured, M.Z.), Plaintiff has been

forced to retain legal counsel for representation in this matter and is accordingly entitled to recover reasonable attorneys' fees and costs pursuant to Texas Civil Practice & Remedies Code § 38.001(8) or as otherwise awardable.

WHEREFORE, Plaintiff respectfully requests the entry of judgment against Defendants for liability and for damages including, but not limited to, past-due monies owed for the subject medical services, attorneys' fees pursuant to Texas Civil Practice & Remedies Code § 38.001(8), Texas Ins. Code § 541.152, or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## COUNT IV – *QUANTUM MERUIT*

Plaintiff re-alleges Paragraphs 1 through 25 as if fully set forth herein, and further alleges as follows.

47.      Hospital Regional Del Rio conferred a direct benefit on Defendants by providing the insured / member (M.Z.) with medical services to which M.Z. was entitled under the Policy as evidenced by Defendants' non-coverage related EOB "explanation" for claim denial and glaring express Policy language covering M.Z.'s precise situation (*see* Ex. B). Examples of "conferral of benefit" (in the form of questions) are discussed in Paragraph 40, *supra*, and incorporated fully into this count by reference.

48.      Defendants were billed Hospital Regional Del Rio's usual, customary, and reasonable charges for the services provided to M.Z. as prescribed by, for example, comparison of the rates of various medical providers of like kind within like geography. The billed charges represent the fair market value of the services rendered.

49.     Defendants received the bill from Plaintiff (or, rather, Plaintiff's authorized representative(s)) but underpaid ($0.00) Hospital Regional Del Rio (*via* M.Z.) for the services; *i.e.*, effectuated a ridiculous rate of payment.

50.     A contract implied-in-fact was doubtless established through UHC's (at the very least) knowledge that services were being rendered and both sides intended for compensation to be paid (especially M.Z. who had no idea that Defendants would pull the rug out from underneath M.Z. as they have, and especially the medical provider who never anticipated providing approximately a month and a half of covered medical services for free), with the parties possessing the compensation intention through the course of their past dealings or otherwise.

51.     In order for the implied-in-fact contract to have been formed, Defendants did not have to be the recipients of the services or request the services.

52.     Hospital Regional Del Rio (*via* M.Z. who, again, is Hospital Regional Del Rio's assignor or creditee, depending on how one views the situation) is entitled to reasonable compensation for the services (*i.e.*, *quantum meruit*), which is by no means accomplished by Defendants' disingenuous $0.00 claim payment. $0.00 for approximately a month and a half of hospitalization concerning serious medical conditions?  Really?  And determination of the proper amount of compensation (*i.e.*, proper rate of payment) is a question of fact reserved for a jury.

53.     The circumstances are such that it would be inequitable for Defendants to retain the benefit of the subject medical services without paying Hospital Regional Del Rio the proper value for same (*via* payment to the indebted and entitled insured, M.Z., who, again, would in turn then be able to satisfy the long-outstanding subject medical bill).

54.     Plaintiff has no other adequate remedy other than this lawsuit to address the injuries suffered as a result of Defendants' underpayment ($0.00) of the subject health insurance benefits.

55.     As a further result of Defendants' refusal to properly compensate Plaintiff, M.Z. has been forced to retain legal counsel for representation in this matter and is accordingly entitled to recover their reasonable attorneys' fees and costs pursuant to Texas Civil Practice & Remedies Code § 38.001(8) or as otherwise awardable.

WHEREFORE, Plaintiff respectfully requests the entry of judgment against Defendants for liability and for damages including, but not limited to, past-due monies owed for the subject medical services, attorneys' fees pursuant to Texas Civil Practice & Remedies Code § 38.001(8) or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## COUNT V – VIOLATION OF TEXAS INS. CODE § 1301.0053

Plaintiff re-alleges Paragraphs 1 through 25 as if fully set forth herein, and further alleges as follows:

56.     Hospital Regional Del Rio provided emergency (we submit) services to M.Z. The services are covered services pursuant to Texas Insurance Code § 1301.0053.

57.     Defendants were billed with specification of the nature of the services in the claim submission package and billed usual, customary, and reasonable charges for such services. The billed charges represent the fair market value of the services rendered.

58.     UHC rendered a claim decision (which Forma ratified as presumed Plan sponsor and / or administrator, *see* footnote 1, *supra*) that grossly underpaid ($0.00) in relation to the services rendered to M.Z.

59.     Defendants are required, pursuant to Texas Insurance Code § 1301.0053 (for example) to properly compensate the medical provider (in this case, *via* the insured, M.Z.) for the subject medical services in an amount equal to the lesser of:  (a) Hospital Regional Del Rio's charges, (b) the usual and customary provider charges for similar services in the community where Hospital Regional Del Rio provides services, or (c) a charge mutually agreed to by Hospital Regional Del Rio and UHC within forty-five days of claim submission.

60.     UHC's claim underpayment decision (which Forma ratified as presumed Plan sponsor and / or administrator, *see* footnote 1, *supra*) contravenes Section 1301.0053.

61.     Defendants have failed to comply with Section 1301.0053 by underpaying ($0.00) for the subject medical services rendered over an approximate one-and-a-half-month span to M.Z.

62.     Plaintiff has no other adequate remedy other than this lawsuit to address the injuries suffered as a result of Defendants' underpayment of the subject health insurance benefits.

63.     As a further result of Defendants' refusal to properly compensate in relation to the subject medical services, M.Z. has been forced to retain legal counsel for representation in this matter and is accordingly entitled to recover his reasonable attorneys' fees and costs pursuant to Texas Insurance Code §1301.108 or as otherwise awardable.

WHEREFORE, Plaintiff respectfully requests the entry of judgment against Defendants for liability and for damages including, but not limited to, past-due monies owed for the subject medical services, attorneys' fees pursuant to Texas Insurance Code § 1301-108 or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## COUNT VI – VIOLATION OF TEXAS INS. CODE § 541

Plaintiff re-alleges Paragraphs 1 through 25 as if fully set forth herein, and further alleges as follows:

64.    UHC (and Forma by extension and ratification as presumed Plan sponsor and / or administrator, *see* footnote 1, *supra*) is an entity that is required to comply with Texas Insurance Code Sections 541.051, 541.060, 541.061, and 541.151. UHC's conduct (and Forma's conduct by extension and ratification) constitutes multiple violations of the Texas Unfair Compensation and Unfair Practices Act. Tex. Ins., up to and including "refusing to pay a claim without conducting a reasonable investigation with respect to the claim."

65.    UHC (and Forma by extension and ratification as presumed Plan sponsor and / or administrator, *see* footnote 1, *supra*) also failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which its liability had become reasonably clear, in violation of Section 541.060(2).

66.    UHC (and Forma by extension and ratification as presumed Plan sponsor and / or administrator, *see* footnote 1, *supra*) also failed within a reasonable time to affirm or deny coverage of a claim to an insured, in violation of Section 541.060(4).

67.    UHC misrepresented the Policy to the Plaintiff by, among other things, stating that payment under the Policy for services rendered were worth $0.00 (which such $0.00 nonsense was ratified by Forma as presumed Plan sponsor and / or administrator, *see* footnote 1, *supra*) in violation of Tex. Ins. Code Sec. 541.061, *et seq.*

(a)  making an untrue statement of material fact;

(b) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

(c) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

(d) making a material misstatement of law; and / or

(e) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.

68.     UHC's (and Forma's by extension and ratification as presumed Plan sponsor and / or administrator, *see* footnote 1, *supra*) unfair settlement practices, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claims, even though Defendants' liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* Texas Ins. Code §§§ 541.051, 541.060, and 541.061.

WHEREFORE, for noncompliance with the Texas Unfair Competition and Unfair Practices Act by UHC, Plaintiff is entitled to (and respectfully requests entry of judgment in relation to same) actual damages, which includes the loss of the benefits that should have been paid pursuant to the Policy, including but not limited to direct and indirect consequential damages, mental anguish, court costs and attorney's fees. For knowing conduct of the acts complained of, Plaintiff asks for three times its actual damages pursuant to Tex. Ins. Code Ann. Section 541.152 et seq.

## COUNT VII – VIOLATION OF TEXAS INS. CODE § 542

Plaintiff re-alleges Paragraphs 1 through 25 as if fully set forth herein, and further alleges as follows:

21

69.     UHC's (and Forma's by extension and ratification as presumed Plan sponsor and / or administrator, *see* footnote 1, *supra*) conduct violated the Texas Prompt Payment of Claims Act in myriad respects. *See* Texas Ins. Code Chap. 542. All violations made under this article are made actionable by Texas Insurance Code § 542.060, and are cause for damages in addition to the amount of the claim, consisting of interest on the amount of the claim at the rate of 18% a year as damages, as well as reasonable attorneys' fees.

70.     By accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, UHC (and Forma by extension and ratification as presumed Plan sponsor and / or administrator, *see* footnote 1, *supra*) has engaged in an unconscionable action or course of action as prohibited by the DTPA §17.50(a)(1)(3) in that UHC (and Forma by extension and ratification as presumed Plan sponsor and / or administrator, *see* footnote 1, *supra*) took advantage of M.Z.'s lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Texas Insurance Code.

WHEREFORE, for noncompliance with Texas Prompt Payment of Claims Act by UHC, Plaintiff is entitled to (and respectfully requests entry of judgment in relation to same) the amount of its claims, costs, reasonable attorney's fees, as well as eighteen percent interest per annum post judgment interest, as allowed by law, and for any other further relief, either at law or in equity, to which it may show itself to be justly entitled, Pursuant to Tex. Ins. Code Sec. 542.058 et seq. and 542.060 et seq.

## JURY DEMAND

71.     Plaintiff demands a trial by jury on all issues so triable as a matter of right.

Dated:  March 20, 2020.

Respectfully Submitted,

**CALLAGY LAW, P.C.**

/s/ Jeffrey L. Greyber
**Jeffrey L. Greyber, Esq.**
Texas Bar No. 24103030
W.D.T.X. Admitted
1900 N.W. Corporate Blvd., Ste 310W
Boca Raton, Florida  33431
(561) 405-7966 (o); (201) 549-8753 (f)
jgreyber@callagylaw.com
hcasebolt@callagylaw.com
*Attorney for Plaintiff*